Compensation Appeals Board
No. 99-021

APPEAL OF JAMAR d/b/a DUNKIN DONUTS & a.

(New Hampshire Compensation Appeals Board)

July 17, 2000

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Michael R. Mortimer* on the brief and orally), for the petitioners.

*Borofsky, Lewis & Amodeo-Vickery, P.A.*, of Manchester (*Mark S. Gearreald* and *Stephen E. Borofsky* on the brief, and *Mr. Borofsky* orally), for the respondent.

NADEAU, J. The petitioners, JAMAR d/b/a Dunkin Donuts and its workers' compensation insurance carrier, Liberty Mutual Insurance Company, appeal a 1997 decision by the New Hampshire Compensation Appeals Board (board) granting the respondent, Elizabeth Farley, a rehearing before the board. The petitioners concede that at the rehearing the board had sufficient evidence to support its finding that the respondent's repetitive use of a cream dispensing machine at work caused carpal tunnel syndrome in her right hand and wrist. Thus, the sole issue on appeal is whether the board had authority to grant a rehearing to review its initial conclusion regarding the nature of the respondent's injury. We affirm.

The respondent applied for workers' compensation benefits, which were denied by the petitioners. After a hearing before the department of labor, the hearing officer concluded that she was not entitled to workers' compensation benefits. She appealed to the board, *see* RSA 281-A:43, I(b) (1999), and was granted a hearing on March 15, 1996. At this hearing, the respondent argued, among other things, that her carpal tunnel syndrome was caused by repetitive use of the cream dispensing machine. Five months after the hearing, the board denied the respondent's appeal without addressing her repetitive-use argument. The board's decision stated only that the claimant had "failed to establish that her [carpal tunnel syndrome] was related to her slip and fall at work on December 23, 1993."

On August 23, 1996, the respondent timely moved for rehearing, *see* RSA 541:3 (1997), which the board denied on November 21, 1996. Four days after the supreme court thirty-day appeal period had expired, *see* RSA 281-A:43, I(c) (1999); RSA 541:6 (1997), the respondent sent a letter to the department of labor expressing

dissatisfaction with the board's decision and requesting that it reconsider its denial of her motion. The letter alleged that the board "simply failed to deal with the matter in controversy," due, in part, to the five months that had elapsed between the hearing and the decision. The letter also indicated that the respondent had not appealed the board's decision because of financial constraints.

On February 3, 1997, the board reversed its prior denial of the respondent's request for a rehearing. After the rehearing, the board found in favor of the respondent, reversing its prior decision. The petitioners unsuccessfully moved for a rehearing and filed the instant appeal.

The petitioners argue that the board erred by granting the rehearing because: (1) the respondent did not timely appeal, and thus, the board's earlier decision was final and binding; (2) the board violated the New Hampshire Department of Labor rules by granting the rehearing; (3) the board lacked jurisdiction to grant the rehearing; and (4) the board's earlier denial collaterally estopped the respondent from relitigating the causal relationship between her injury and her employment.

"We will overturn the board's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the order is unjust or unreasonable." *Appeal of Wausau Ins. Cos.*, 143 N.H. 478, 480, 727 A.2d 988, 989 (1999) (quotation omitted).

Under the Workers' Compensation Law, unless a party appeals to the supreme court, the decision of the board shall become final thirty days after the application for a rehearing is denied. *See* RSA 281-A:43, II (1999 & Supp. 1999); RSA 541:6. "In view of the practical protective function of workers' compensation, the desirability of preserving a right to reopen for genuine mistake seems too self-evident for argument." 8 A. LARSON & L. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 131.05[2][b], at 131-60 (2000). Consequently, the finality of RSA 281-A:43, II is not absolute. Rather, our legislature has included a provision in the Workers' Compensation Law — RSA 281-A:48 (1999) — that specifically serves to "preserv[e] a right to reopen for genuine mistake." *Id.*

RSA 281-A:48, I, provides that within a specified time period, any party at interest may petition the commissioner of labor (commissioner) to review a denial or an award of compensation on the basis of, among other things, a "mistake as to the nature or extent of the injury or disability."

In *Johnson v. Aetna Life & Casualty Co.*, 131 N.H. 698, 702, 559 A.2d 838, 841 (1989) (decided under prior law), we held that

while, generally, the commissioner has "no jurisdiction to modify an award it has previously rendered" if the award is final under RSA 281:37, II (predecessor to RSA 281-A:43, II), RSA 281:40 (predecessor to RSA 281-A:48) provides an "exception" to such finality. *See also* Laws 1988, 194:1 (legislature's intent in enacting RSA chapter 281-A was to preserve the content of RSA chapter 281). Thus, although the board's decision becomes final thirty days after the board denies the motion for rehearing, *see* RSA 281-A:43, II, we hold that RSA 281-A:48 provides an exception to the finality otherwise accorded board decisions. *See Johnson*, 131 N.H. at 702, 559 A.2d at 841.

While RSA 281-A:48 provides that a party may petition the commissioner to review a decision for mistake, a *de novo* appeal from an adverse decision by the commissioner can be taken to the board. *See* RSA 281-A:48, V, :42-a, I (1999). We consider whether RSA 281-A:48 provides the board with the authority to review a decision for mistake in the first instance when the mistake is alleged to have been committed by the board.

In this case, the board was certainly in the best position to review the respondent's petition because the petition alleged that the board had inadvertently failed to consider one of her arguments. Requiring that the commissioner first conduct a hearing and issue an order on the question of whether the *board* made a mistake before permitting review by the board itself would be inefficient.

In addition to furthering the purpose of judicial economy, allowing the board to review its own mistake in the first instance is consistent with the purpose of the Workers' Compensation Law, which is "to afford employees a sure remedy when they are injured on the job and to provide for a fair resolution of disputed claims." *Buyer v. Abundant Life Farm, Inc.*, 127 N.H. 345, 348, 499 A.2d 1011, 1012 (1985) (decided under prior law). Moreover, we construe the Workers' Compensation Law liberally, "resolving all reasonable doubts in statutory construction in favor of the injured employee in order to give the broadest reasonable effect to its remedial purpose." *Appeal of Rainville*, 143 N.H. 624, 627, 732 A.2d 406, 410 (1999) (quotation omitted).

■■ Finally, because the legislature cannot anticipate all of the problems incidental to the carrying out of administrative duties, administrative entities generally have the implied or incidental powers reasonably necessary to carry out the powers expressly granted to them. *See* 2 AM. JUR. 2D *Administrative Law* § 62, at 83-84 (1994). When the mistake is alleged to have been committed by

the board, we conclude that RSA 281-A:48 provides the board with the limited authority to review its own decisions for mistakes in the first instance. *Cf. State v. Haycock*, 139 N.H. 610, 611, 660 A.2d 1115, 1115-16 (1995) (affirming the trial court's continuous discretionary powers to correct errors prior to final judgment notwithstanding that the motion to reconsider was untimely).

Although the board did not explain its decision to grant the rehearing, there can be little doubt that the board's intent was to consider whether it had made a mistake in its first decision. At the first board hearing, the respondent argued that her carpal tunnel syndrome was caused by the repetitive use of the cream dispensing machine. The board denied her appeal, stating that she had failed to establish a causal relationship between her carpal tunnel syndrome and *a work fall*, but not addressing her repetitive-use argument. In her initial request for a rehearing, the respondent complained that the claim rejected by the board was "not the claim that [she had] presented to the Board at all." Finally, in its letter granting the rehearing, the board stated that it "will consider the matter of the creamer pumping repetitive motion," suggesting that it had failed to do so at the first hearing.

RSA 281-A:48 does not grant the board unlimited authority to review mistakes, however. Instead, the potential mistake must be of the type set forth in the statute: "a mistake as to the nature or extent of the injury or disability." RSA 281-A:48, I. "It is clear that an allegation of mistake should not be allowed to become a back-door route to retrying a case because one party thinks he or she can make a better showing on the second attempt." LARSON & LARSON, *supra* at 131-57.

The respondent argues that the board made a mistake as to the nature or extent of the respondent's injury or disability because in its first decision the board limited its review to whether the respondent's carpal tunnel syndrome was caused by the trauma of a work fall. At the rehearing, however, the board considered the respondent's argument that her injury was caused by the repetitive use of the cream dispensing machine. The respondent argues that by initially focusing on the respondent's injury as traumatic carpal tunnel rather than repetitive-use carpal tunnel the board made a mistake as to the nature of the respondent's injury that resulted in the board's erroneous finding of no work-related injury. The petitioners argue that the board's mistake does not relate to the "nature" of the respondent's injury because the board's essential finding, that the respondent suffered from carpal tunnel syndrome,

was correct and remained consistent in both of the board's decisions.

■ We conclude that the board's error in failing to identify the respondent's injury as repetitive-use carpal tunnel syndrome was a mistake as to the nature of the respondent's injury: that is, a mistake relating to the "essential character or constitution" or the "distinguishing qualities or properties" of the injury. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1507 (unabridged ed. 1961); *cf. Wausau*, 143 N.H. at 480, 727 A.2d at 989 (describing the nature of the injury as a cumulative trauma injury). The board had evidence before it that traumatic carpal tunnel syndrome and repetitive-use carpal tunnel syndrome have different physical manifestations, which are identifiable through an electrodiagnostic study. Accordingly, we conclude that traumatic carpal tunnel syndrome has different "properties" or a different "constitution" than repetitive-use carpal tunnel syndrome.

We conclude that the board's error constitutes a mistake as to the "nature" of the injury under RSA 281-A:48 which the board had authority to correct. We decline to reach the question of whether the board's error as to the *cause* of the respondent's injury, alone, would have been sufficient to warrant a rehearing under RSA 281-A:48.

The petitioners argue that this case is controlled by *Magoon v. New England Power Co.*, 103 N.H. 366, 172 A.2d 366 (1961), and *Petition of Ellis*, 138 N.H. 159, 636 A.2d 62 (1993). We disagree. In *Ellis*, the issue was whether the party's petition for writ of certiorari was timely filed. *Ellis*, 138 N.H. at 159, 636 A.2d at 63. In the instant case, however, we consider the board's authority to reopen and correct its own decision under RSA 281-A:48, a statute that did not apply in *Ellis*. We find *Magoon* similarly inapplicable. We decided *Magoon* under the statutory provision governing new trials, not the predecessor to RSA 281-A:48. *See Magoon*, 103 N.H. at 368, 172 A.2d at 368. The petitioners' remaining arguments are premised on the assumption that the board's conduct was not statutorily authorized, and we find them without merit in light of the above opinion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

BROCK, C.J., and HORTON and BRODERICK, JJ., did not sit; GRAY, J., retired superior court justice, and MCHUGH and GROFF, JJ., superior court justices, sat by special assignment pursuant to RSA 490:3; all who sat concurred.